

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RUDOLPH REESE, )
)
Plaintiff, )
)
vs. ) No. 07 C 2567
)
THE CITY OF CHICAGO and CHICAGO )
POLICE OFFICER CRAIG LANDRUM, )
#19365 and GREGORY JONES, #19819 )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendant has filed 27 motions *in limine* to exclude evidence. A number of them are not opposed or plaintiff agrees with them, or plaintiff does not think they are necessary because they seek to bar evidence which would never come in in the first place. In other instances, plaintiff does not really oppose the motion but can conceive of instances where the defendant would open the door or in some way come up with something that would cause plaintiff to have a basis for inducing the evidence. We treat all those circumstances as excludable evidence and grant the motion. These are motion no. 3, motion no. 4, motion no. 5, motion no. 7, motion no. 8, motion no. 9, motion no. 10, motion no. 11, motion no. 12, motion no. 14, motion no. 17, motion no. 18, motion no. 20, motion no. 21, motion no. 22, motion no. 23, motion no. 24, and motion no. 27. We grant some of those motions on the supposition, for example, that there will be no evidence of a permanent injury, and that no conspiracy has been claimed. All of the rulings are subject to review in the event that specific circumstances of a more narrow nature present themselves, which would permit some of the evidence to come in.

We grant defendants' motion *in limine* no. 1 over plaintiff's objections. There is no

reason for Chicago Police Department regulations of that nature to come in if they do not rise to the level of constitutional violations, unless a specific violation may be germane to a pattern of conduct of which the plaintiff complains. We also grant the motion to bar references to sending a message, except for any punitive claims against the individual officers.

Referring to defendants' motion *in limine* no. 6, plaintiff may ask for a specific amount in the opening and during closing argument, but there can be no appeal to what would satisfy this particular jury. We do not run the risk of improper questions from the attorneys, since the court will be asking the questions.

Referring to motion *in limine* no. 13, plaintiff can bring out that the officers' time in court is the same as any other time on the job and that they get their regular salary during the hours that they have to spend in court, but it should go no further than that.

In defendants' motion *in limine* no. 10, they do not want any reference to being indemnified. And in no. 14 they do not want their attorneys referred to as corporation counsel. While this court has long thought that the possibility of prejudice in those circumstances is remote, and that it probably is a better practice to let the jury know that the city will be paying compensatory but not punitive damages, we will be governed by the conventional consensus, which is that that information does not come in.

Defendants' motion *in limine* no. 15, respecting training, is not relevant to any Monell claim, because there is no Monell claim. It may well not be relevant to the claims advanced by plaintiff here, but in the absence of knowing what may be sought to be introduced we cannot be sure that a lack of some training or another is relevant to why the officers did what they allegedly did. Final rulings here await further development of the evidence.

With respect to defendants' motion *in limine* no. 14, plaintiff may inquire of the officers

who are witnesses, about their concepts of loyalty to other officers, but may not engage in a wide-ranging attack on the blue shield and code of silence and the like. A little is possible, but it should not be overdone. The results of the criminal case, SOL, can be made known to the jury. That should be done in the context of the court providing an instruction that in a criminal case proof must be beyond a reasonable doubt, as contrasted to the preponderance of the evidence in a civil action. This is an issue that can be taken care of by instruction. We assume that the jury will want to know what happened. We will also assume that the jury should know what happened during the arrest, and that includes not giving Miranda warnings or permitting a telephone call, if that in fact is what happened. It is possible that plaintiff can argue that this was part and partial of a bad procedure and it may well be that plaintiff cannot reasonably argue any kind of harm by that happening, and therefore it is just part of the history of the arrest. A final ruling on this awaits further development.

We permit the admission of the evidence requested.

Plaintiff has filed six motions *in limine*. The first would bar evidence of plaintiff's conviction for criminal sexual assault twenty years ago. That motion is granted. It is well beyond the ten-year presumed bar and has little to do with credibility or truthfulness n any event. Plaintiff seeks to bar admission of prior arrests that did not lead to convictions. A basis for plaintiff claiming that that evidence is admissible in that he continues to have nightmares drops out because plaintiff claims he will not offer any nightmare testimony. Some of that may become marginally relevant, depending upon the emotional distress evidence that comes into plaintiff's testimony. We at this point do not know what specifically plaintiff wants to introduce and what specific arrests we are talking about.

The motion to bar references to plaintiff as a registered sex offender is granted. We

leave to another day the ruling on motion *in limine* no. 4, since at this juncture we have no firm basis for our determining whether plaintiff's knowledge of street narcotics and the language associated with it is at all germane to any issue in this case. We fail to see why a personal injury lawsuit arising from an automobile accident is evidence of bias against police officers. The response, however, indicates that there may have been other suits about other matters, and therefore we leave this motion open. Finally, we believe that defendants can testify they were on foot patrol because it was a high crime area, so long as they do not over-emphasize the matter.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 7, 2008.